It's Weiland v. Loomis. Thank you. May it please the Court, my name is Philip Saverin and I represent the appellant Deputy Shawn Loomis in this matter. The question presented in this appeal is whether the state can be liable under the Due Process Clause when it fails to prevent an inmate from escaping from custody who then injures a third party. A secondary question presented is whether bystanders to the assault, who are the appellees in this matter, assault committed by that escaped inmate, have a claim of deprivation of life, liberty, or property compensable under the Due Process Clause. We would submit that the answer to both of these questions is no. Deschany and his progeny is well known at this point that the state does not have a constitutional obligation to protect the citizenry from harm at the hands of private persons. Counsel, before we get too far into the merits, I wonder whether we have a live controversy. There's been a public report that this case has already been settled. What is the status of that? It has not. There was a consolidated appeal with another action that was brought from the same situation. That one, which was Appeal 18-2052, has been resolved. This one, which was brought by patients who were bystanders to the assault, 18-2054 has not. Okay. Does that satisfy the Court? Well, it would satisfy me better if we had a copy of that settlement. We usually don't take people's word for what documents say. I believe that the dismissal of 18-2052 did indicate that those claims had been resolved, but I'm not entirely sure. I would like to know exactly what has happened, what the terms are, who is being released. The Deputy Loomis and the county, which was... I'm asking you to file a copy of this document. I hope that's sufficiently clear. Okay. I understand what the Court is asking for. What court was this in? What court was it in? The settlement. It was in this court. It was Appeal 18-2052. So it would be across the whole? The paper. I don't know. I don't believe the settlement agreement was filed in the court record. Right. Any appeal can be dismissed for any reason, but whether this is a live case depends on the terms of that settlement. That's why I would like to see those terms. Okay. The alternative seems to us, seems to me anyway, to dismiss this appeal because we are not confident that anything turns on the outcome. Okay. I will address that with counsel and with the parties. There may be some confidentiality provision. I don't think there's anything that prevents a settlement from being revealed to the judiciary. I don't... And if you think that you can settle a case and hide the terms from the court... I'm not saying that at all. ...that's going nowhere. I'm not saying that at all. I'm not saying that at all. Then you shouldn't have any doubt about what you now need to do. Okay. I believe the court is very clear. With respect to the claims by these plaintiffs, which were patients in the hospital at the time, the main point that we're trying to individuals who are harmful and that it follows from that the individuals who are harmed by inmates who have escaped cannot claim a violation of their due process rights. Now, of course, DeShaney alluded to or DeShaney held that if the state takes someone into custody or there's an involuntary commitment, there can be an obligation to provide for their safety. And in a footnote, the court in DeShaney did say that there are some circuits that have recognized a state-created danger rule. And that's in footnote four, and I quote, where the state learns that a third party poses a special danger to an identified victim and indicates his willingness to protect the victim against that danger. And several circuits, including this one, have relied on that footnote, in part, to create a three-part test for determining when the state-created danger obligation arises. Let's move in on the third element of that test, the proximate cause issue. Obviously, a fact-specific decision. The district court dedicated only about a page or so to determine that the plaintiffs were foreseeable victims. Can you speak to that third element and the record that was made by the district court and the record that's before us? Absolutely. So the issue that we have with what the district court found is that the plaintiffs were foreseeable victims because the inmate escaped within the confines of the hospital, and they were in the hospital at the time. We would say that that's analogous to the general public being exposed to harm and that the rule is that there needs to be some identifiable victim. And where do you get that rule? Is there a case or an authority that you're relying upon to offer that rule to us? Yes, there are several. First of all, I would cite to the footnote in the Supreme Court as alluding to the circuit court decisions. I would also cite to this court's decision in the Witkowski case in which the court found that there was no state-created danger because the plaintiff was not rendered helpless and that, this is a quote, allowing Ball, who was the criminal defendant in that case, into court without the stun belt and imperiled everyone there. So I would analogize the situation in this case where Mr. Salters was allowed to, or seized the weapon and escaped into the confines of the hospital. I would analogize that to it happening in a shopping mall or a movie theater or a bus station where there are identifiable people there, but the same as there being identifiable groups of people that there would be in the general public. What are you offering? A room like the courtroom that the Ball shooting happened in? Are you offering a building? We're trying to get our, we're looking for the touchstone with regard to where that limit is. What makes it, I know Judge St. Eve used the phrase particularized, we're looking for where that limit is. Well, I think that if you look at the decisions, the decisions where this court has found there to be or not be the proximal cause element met specific to the state-created danger rule. We have the Payne case where it was directed at the woman who was picked up at the airport and then left stranded at night seven miles away. There's the Monfils case where the confidential informant tape was, the confidential informant was unmasked because the tape was released against assurances that it wouldn't be. We have the White case. No, these are all cases, but I understood the question to be where in the world does this rule come from? It doesn't come from DeShaney, right? DeShaney just says some courts have recognized some possibility. Is there any basis in anything the Supreme Court has ever written for this exception? I mean, it seems very strange for courts of appeals to announce that they're creating exceptions to decisions of the Supreme Court. Well, I don't think that it's an exception. I think it's a category. That's exactly how it's described in our cases as the quote state-created danger exception. As if states, as if courts of appeals can create exceptions to rulings of the Supreme Court, which is a little weird. You may probably don't know because the parties haven't filed this, but the Sixth Circuit just released an opinion saying this is all a bunch of hooey and it does not have any legal basis. And not all circuits have this quote-unquote exception, but within the quote-unquote exception, the Buchanan v. Moore case says that a danger to the general public is not an approximate cause that satisfies the state-created danger exception. And so what I'm saying is... Exception to what? Exception to the Fifth Amendment? Exception to Descheny? Even you are using that word. I tried to use the word claim in my brief carefully, and there's a footnote that I dropped in the opening brief where I said it's called an exception, but it's really creation of a claim based on state-created danger. I guess it's an exception to the rule that the state does not owe a duty to protect. But on the causation, I see my time is rapidly decreasing, but I want to make this point that in this particular case we have bystanders and the nature of the injury, the nature of the harm is something that Buchanan and Moore specifically says is part of the approximate cause analysis. There is no case that we have found anywhere that says that the fear of harm, a fear of being harmed by an escaped criminal or just by a third person is an actionable injury under the Due Process Clause. And I would dare say that by hearing or otherwise witnessing the SWAT officers negotiate or hearing the ongoing assault is not a deprivation of life, liberty, or property that's protected by the Substantive Due Process Clause. I would like to reserve some time for rebuttal if I may. Certainly, Mr. Saverin. That's me. Thank you. Mr. Shoup. Respectfully honored to pronounce Scope. Good morning, Your Honors. May it please the Court, Counsel. My name is Devlin Scope and I'm representing the Plaintiff Appellees. The Sheriff's Deputy is not entitled to qualified immunity. Mr. Shoup, I have one central question for you. Yes, Your Honor. Which is what case do you think clearly establishes the rule that a prison guard must keep control of the prisoner on pain of liability? In the context of the substance, Your Honor, I'm sorry. Yeah, I'm asking for case citations. Fair enough. I would start off with a general proposition of the Shaney that says No, you cannot. This is a qualified immunity appeal. Okay. The Supreme Court has said over and over and over that the right has to be established with great specificity. So that's why I'm asking where is it clearly established that there is liability if a prison guard fails to keep control of a prisoner? I ask this particularly because your adversary, at page 14 to 15 of their brief, cites quite a number of cases which seem to say there's no such liability. And you didn't cite any contrary case. So this is your opportunity to tell me where it's clearly established. I will start off with Your Honor's decision in Wachowski. With what? With the case of Wachowski. The ball shooting. The ball shooting, Your Honor, in the courtroom. And I want to be very clear about why I'm talking about Wachowski first. First of all, Wachowski is different because although the officer, first of all, the plaintiff in that case was a law enforcement officer himself. So Wachowski dismissed the substance abuse process claim because the theory was that the officer had a duty to react. So when the officer, when the two sheriff's deputies did not put the stun belt on the prisoner and the prisoner tried to attack the judge or the jurors in the courtroom, the plaintiff was a law enforcement officer who responded to that. Since he had an affirmative legal duty to act, the court said that he could not have a cause of action because he was, by taking a public employment job as a law enforcement officer, he essentially agreed to step into the lion's den or to the snake pit. That was why he had no cause of action. But that case, Wachowski also recognized what this court has always said was clearly established law in this circuit since 1979, that when a defendant creates the danger or increases that danger, they're on the hook for the liability. I hope my question is clear. I am looking for any case in any circuit holding that a guard's failure to keep control of a prisoner is a basis of liability. Wachowski is not such a case. Are there any, or excuse me, is there any? As I noted in our brief on page 26 of our brief, we said to be sure a reasonable search of seven circuit cases. In effect, circuit May 13th of 2017 did not have that specific fact pattern. I'm asking for any case. Pick a circuit. Pick a district court. When I look for one specifically that's directly on all fours, I couldn't find one specifically. I'm not asking about prisoners who are in hospitals, where we're talking all fours. I'm asking for any case establishing the proposition that a guard is liable for failing to keep control of a prisoner. That gives you a fairly large field to play on because the number of escaped prisoners is deplorably large. I would certainly agree with you, Your Honor, but it's not just that the prisoner escaped, though. It's that the situation is that the officer actually created the situation by leaving him there. So I'm giving you kind of free reign over a field that's larger than this one. Is there any such case? I looked. I could not find it. Yes. Well, you didn't find it. I didn't find it. How, then, is it clearly established when, if you look around, there are some cases saying no and no cases saying yes? Right. Well, because, as I said in the page 26 of our brief, you don't have to have a case on all specific parts. No. What you want to do is just state the right at a very high level of generality, and that gets a court of appeals summarily reversed. Every term, the justices summarily reverse a court of appeals for doing that. They've been doing this now for 10 years. I have no desire to be next in line. And I have no desire to put you on the chopping block, Your Honor, but the fact is that the court has also said that you don't have to have a case directly on all fours. And the Supreme Court has also made it abundantly clear that there isn't a level of generality, Your Honor. Of course this is a level of generality problem. The district court said that the clearly established right is the state-created danger exception, which is the highest possible level of generality. Right. And the Supreme Court has also said that when you, as a law enforcement officer, engage in certain kinds of acts which are obviously, obviously boneheaded, that they can rise to the level. Do you remember? I don't know. Well, I don't know whether you remember this. But that's exactly what the court of appeals said in about half of these summary reversals. It got the Fifth Circuit reversed 9-0 in one case. It got the Ninth Circuit reversed 9-0 in one case, saying it's clearly established, but then the only thing that clearly establishes it is something at a high level of generality, 9-0. There is no justice who supports that view, not one. Well, Your Honor, I would respectfully disagree in this sense. Well, what Supreme Court case are you relying on for the proposition that one can state the right at a level like, there is a state-created danger exception, and then go direct from that to, and this is clear, and therefore I don't need any intermediate steps. Your Honor, what I'm trying to say is this, is that I freely admit and concede that there was never a case directly on all fours. Forget all fours. I'm giving you the entire world of escaped prisoners to find me any case. Well, I believe, respectfully, Your Honor, I thought I answered that question. I was unable to find one. Mr. Scope, let's talk about this proximate cause issue that I talked about with Mr. Sabrin. What facts do you say tend to show a proximate causal link between Loomis' conduct and the mental trauma that the plaintiffs suffered? Well, two points, Your Honor. First, for these substantive due process claims, there's been no case law that has ever limited recoverable damages only to physical injuries. In fact, Judge Zinne, in her footnote in the decision, emphasized that emotional distress damages are recognized under Supreme Court case law as a compensable form of injury. If there is also physical injury. What are the cases you're relying on for emotional distress where there's no physical injury? Well, Your Honor, I'm citing to White v. Rochford specifically, which was decided back in 1979, that recognized that. Now, mind you, in Rochford, I would gladly recognize that when the children were leaving the abandoned car and trying to traverse across the Chicago Skyway, that one of them was an asthmatic. But they also, while they did not suffer any physical injury of being run over by a car, they were in apprehension of such fear, and that can be a compensable injury. And that's been an established law since 1970. It can be a compensable injury if there's physical injury. If you actually look in a tort treatise, you find it is a black-letter rule that there's no damages for emotional distress without physical injury. Your Honor, that's not... Yes, that is general black-letter law. That's not necessarily the law in the state of Illinois, for example, for an intentional infliction of emotional distress claim. What I'll also say is that while the Supreme Court has recognized that 1983 claims typically use the bonds of tort law, there's not a specific case that says directly that you must have a physical injury at the same time in order to recover for the emotional distress injury. But Mr. Salters here did not know that the patients were in the room and receiving this trauma, so it wouldn't be intentional infliction of emotional distress. It would be negligent infliction of emotional distress. And with regard to your comment of what Judge St. Eve said, at that point, though, she would have had all six plaintiffs before her, correct? She would have had both the nurses and the patients. In Judge St. Eve's order... Yes, Your Honor. In Judge St. Eve's order, it made no distinction between the plaintiffs or the... Excuse me, the nursing plaintiffs... nurse plaintiffs or the patient plaintiffs. The fact that... Now, the Seventh Circuit has also recognized that there's not... Buchanan recognized that you can't have a class of foreseeable people from the entire county of Milwaukee. We're not taking that position. What I am saying is that anybody within the immediate vicinity of the hospital was certainly a foreseeable person that could be harmed. So when Mr. Salters did break loose, did grab the gun and start rampaging, Ms. Weiland herself was right behind the door listening to all this, both the sexual assaults, the rampaging, the struggles. Now, you have to place yourself in her position, standing behind a door of a hospital, just a hospital room door. Nothing else is protecting her while she's listening to all this. That's traumatic. I do believe that that's compensable under the case law. What level of particularity does the record have to show on that proximate cause issue? Because what we have before us here is we've got the one page. And that's my question. I would say, first of all, since this was a 12B6 motion to dismiss based on the factual allegations of the complaint, we have to take them based on the factual allegations of the complaint. Now, I will be very candid with this court that those facts could change once we do the discovery, once we hear a motion for summary judgment, and there could be issues of what really happened, where were you, what did you actually hear, what did you actually perceive, what real risk were you in? But on a 12B6 motion, I and this court would have to assume she's right in the immediate vicinity, as was Ms. Crone's, that they heard everything and they were in fear that they were going to be the next victim, whether it was going to be a sexual assault, physical assault, someone brandishing a gun in your face, things of that nature. Because when that type of violent crime happens, that is a tangible injury. That's not something that you just walk away from for the rest. It walks with you, stays with you for the rest of your life. Judge Brennan, I wasn't sure. You've answered my question. Thank you. Your Honor, what I was attempting to say earlier is that it's very clear from our perspective that officers, excuse me, Sheriff Stephanie Blumas created the situation. I think their brief makes it very clear. He left his charge unshackled for about a good 30 minutes, which emboldened him to take the deputy's weapon. Once that deputy lost his weapon, he increased that danger several ways. One, he fled, and he didn't even try to warn anybody. That creates a situation where Mr. Salter's able to roam the hospital, take hostages, threaten people, abuse them. I do believe, as I've already addressed it, that my two plaintiffs have a cause because the injuries that they were going to sustain were within the proximate cause. Now, and I think that based on the allegations that we have, that we do have a situation where it does shock the conscience because, as Judge Cenev recognized below, this is not some situation where Deputy Blumas was having to make some snap judgments. What he did, based on the allegations in the complaint, are reflective of deliberate indifference. He was able to calmly, not in the heat of the moment, sit there, make a choice to unshackle his prisoner, made a choice to not watch and closely supervise his prisoner that enabled his prisoner to take control of his weapon, which created this chain of events that caused a rampaging. So we do believe that we have a conscious shocking event, that we do have a situation where the situation was created and increased by the law enforcement officer, and we do believe that we have a set of plaintiffs whose injuries were proximately caused by the affirmative acts of Deputy Blumas. Now, Judge Easterbrook, I really recognize the great concern about having these issues of fact being too general to raise the issue for purposes of qualified immunity, but I also believe that when law enforcement officers are sitting in a situation where you're asked the question, do you believe that this is obvious that I could be exposed to liability if I disregard someone I'm charged to protect, excuse me, to guard, let him walk around the hospital room unshackled, don't pay attention to him, play with my cell phone, it sounds like you have the basis of a good state tort action. And not being able to recover under 1983 certainly does not limit your ability to recover under state law. But the Supreme Court has said more than once that the Constitution does not replicate all state law of torts. Thank you, Counsel. Thank you, Your Honor. I see my time is up. Thank you. Anything further, Mr. Saverin? Yes, I wanted to start out by saying that I think it would be a dangerous precedent if bystanders can sue for deprivations of due process. Under the Appellee's Theory, everyone in the hospital would be a potential plaintiff. And one other potential remedy, not all that helpful to these plaintiffs, would be the discharge and criminal prosecution of somebody who behaved as Loomis did. What's happened to him? I personally do not know. He's your client. I understand that. I've come in as appellate counsel. I don't know what his personal situation is at the moment. I also would like to say that the first element I think is important here, the need for an affirmative act that creates or increases the danger. Of course, that cannot be construed so broadly as to eviscerate the essential distinctions that the cases have drawn as it would swallow up the De Cheney rule. Do you know, Mr. Saverin, if Mr. Loomis, Officer Loomis, was following any protocol with regard to unshackling to go for Salters to go to the bathroom that he was supposed to shackle right afterwards? Is there any kind of protocol on the record? There isn't any protocol on that. And it is alleged in the complaint that Mr. Salters was unshackled for the previous two days and walked in the hallways without any incident. The reason for the shackling was because he was a flight risk and a suicide risk. He had been incarcerated for robbery and he was a pretrial detainee for receiving a stolen vehicle. There was no indication at all that he would be physically assaulted. That's not to say that he shouldn't have been custody should have been maintained as a general principle, but it does mean that it was not shocking that he was unshackled to use the restroom and was left unshackled given the allegations in the complaint. I also want to point out that what the district court found was the affirmative act was unshackling the inmate, Mr. Salters, which then provided Mr. Salters with the opportunity to seize the gun to overpower the deputy and seize the gun. That's very different from an affirmative act that, for example, giving Mr. Salters the gun. Counsel, could you remind me why is he in a hospital in the first place? He was in the hospital because he had ingested cleaner and other things in the jail trying to harm himself and so he was in the hospital for that medical treatment. Treatment for the ingestion? Yes, and so going to the restroom was something that he needed to do in order to flush his system. But I wanted to address this one last minute the Reid case back from 1993. It's before the three-part test. It's before Twombly and Iqbal, but in that case, there's a quote in there that I think is very important. The affirmative act, although it didn't phrase it that way, was, quote, police officers who remove sober drivers and leave behind drunk passengers with keys may be said to increase the danger. That's not what happened here. What happened here would be the same thing in the Reid case if the officer had arrested the driver and the drunk passenger grabbed the keys and drove off. Thank you very much. We will take the case under advisement and we will defer action for seven days to give the parties time to file a copy of the settlement agreement. Your Honor, we will file it under seal because I think it may have some personal sensitive names in there. You can file it with a motion for it to be under seal. That's right. We will act appropriately. We will do so. Thank you. Our next case for argument is Berger against Macon County.